**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **NEVADA IRRIGATION DISTRICT,** |
| Plaintiff, |
| v. |
| **EILEEN SOBECK, in her official capacity as Executive Director of the California State Water Resources Control Board**, *et al.*, |
| Defendants. |

Case No. 1:20-cv-03523 (TNM)

<u>**MEMORANDUM ORDER**</u>

This case involves a California water agency suing a state-wide board (again in California) over water-quality regulations for a river development in California. The Defendants move to transfer this case to the Eastern District of California. Upon consideration of the parties' filings and the relevant law, the Court will grant the motion.

**I.**

Plaintiff Nevada Irrigation District ("NID") is a local agency tasked with managing water conservation and development projects in a district covering more than 287,000 acres in Placer and Nevada Counties in California. Compl. ⁋ 14, ECF No. 1.[1]  It owns and operates the Yuba-Bear Hydroelectric Project ("the project"), which helps NID generate energy and supply healthy water to over 20,000 customers in its coverage area. *Id.* ⁋⁋ 1, 14–15. For the project, the Federal Energy Regulatory Commission ("FERC") issued NID a license, which required renewal upon its expiration in 2013. *Id.* ⁋ 26. As part of the renewal process, and in accordance with Section

---

[1]  The Court focuses on the facts necessary to its determination of the motion to transfer.

401 of the Clean Water Act, NID had to seek a water quality certification from the California

State Water Resources Control Board ("the State Board").  *Id.* ⁋ 2.

   At the heart of this dispute is a purported certification ("the certification") issued by the

State Board in August 2020.  *Id.* ⁋ 3.  It imposes on NID certain conditions and obligations,

including complying with state water quality standards.  *Id.* ⁋ 58.  NID argues that the State

Board waived its certification authority by not acting on NID's initial application within one year

of its filing.  *Id.* ⁋⁋ 46, 81.  FERC agreed and issued a finding that the State Board had waived

the regulatory authority granted to it under Section 401.  *Id.* ⁋⁋ 47, 49.  The State Board filed a

Petition for Review of FERC's waiver determination before the U.S. Court of Appeals for the

Ninth Circuit.  *Id.* ⁋ 50.  NID has intervened in the defense of FERC's decision, and the case is

pending before that court.  *Id.*; *see S. Yuba River Citizens League v. FERC*, No. 20-72452 (9th

Cir. filed Aug. 17, 2020).

   NID also filed two lawsuits of its own—this one and one in California state court.  *See*

Defs. Mot. to Dismiss, Transfer, or Stay and Mem. of P. & A. in Supp. ("Mot.") Ex. 2, ECF No.

8-2.  In California, NID sought a writ directing the State Board to vacate the certification.  *Id.* at

34.[2]  NID similarly asks this Court to enjoin enforcement of the certification, declare that its

regulations violate various federal and state laws, and direct the State Board to withdraw it.

Compl. at 40.  The State Board moves to dismiss the complaint, or in the alternative transfer it to

the Eastern District of California, or at least stay the case pending the outcome of proceedings

before the Ninth Circuit.  *See* Mot. at 53.  After the Court ordered NID to respond to the question

of transfer only, NID filed an opposition.  Resp. of Pl. Nevada Irrigation District to Mot. of Defs.

Sobeck, Et Al. to Transfer ("Opp'n"), ECF No. 13.  This transfer issue is now ripe.

---

[2]  All page citations refer to the page numbers that the CM/ECF system generates.

## II.

The transfer statute permits a district court to "transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  When considering a motion to transfer, courts undertake a two-step inquiry.  A court first determines whether venue is proper in the proposed transferee court—the district where the case "might have been brought."  *Id.*  If so, the court then weighs "a number of case-specific factors" to decide whether transfer is warranted.  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *see Aftab v. Gonzales*, 597 F. Supp. 2d 76, 80 (D.D.C. 2009) (explaining that courts use their "broad discretion to balance" these factors).  The burden rests with the party seeking transfer.  *Aftab*, 597 F. Supp. 2d at 79.

## III.

The Court begins by confirming that this action may have commenced in the Eastern District of California, which NID never disputes.  The Court then finds that the private- and public-interest factors support transfer.[3]

### A.

For starters, venue was proper in the Eastern District when NID filed its Complaint.  *First*, an action may commence in any judicial district in which "a defendant in the action resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).  Defendants are sued in their official capacities as members of the State Board, headquartered in Sacramento in the Eastern District.  *See* Cal. Water Code § 181 ("The [State

---

[3]  The Court need not address any arguments on its jurisdiction before reaching the transfer question.  *See Aftab*, 597 F. Supp. 2d at 79 ("Although the defendants have moved to dismiss for lack of subject-matter jurisdiction, the motion to transfer venue under § 1404 may be addressed first.")

B]oard shall maintain its headquarters in Sacramento . . . ."); *see also Nestor v. Hershey*, 425

F.2d 504, 521 n.22 (D.C. Cir. 1969) ("Where a public official is a party to an action in his

official capacity he resides in the judicial district where . . . he performs his official duties.").

*Second*, venue also properly lies in "a judicial district in which a substantial part of the events or

omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  Here, the State Board

issued the certification in the Eastern District, which is also the location of the project.  *See*

Compl. ⁋⁋ 25–31, 51–53.  For either reason, NID could have filed this case in the Eastern

District, and it has not argued otherwise.

### B.

The Court next considers the private- and public-interest factors.  Both favor transfer.

### 1.

Courts generally consider the following private-interest factors: "the parties' choices of

forum, where the claim arose, the convenience of the parties and witnesses, and the ease of

access to sources of proof."  *Montgomery v. Barr*, --- F. Supp. 3d ---, No. 1:20-CV-03214

(TNM), 2020 WL 6939808, at *6 (D.D.C. Nov. 25, 2020) (cleaned up).  On balance, these

factors support transfer.

As NID notes, *see* Opp'n at 3, a plaintiff's choice of forum is ordinarily entitled to

deference.  *Trout Unlimited v. USDA*, 944 F. Supp. 13, 17 (D.D.C. 1996).  But that deference

recedes when the district is not the plaintiff's home and the forum has a tenuous connection to

the controversy.  *Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 144 (D.D.C. 1979).

More, "when the forum preferred by the plaintiff is not his home forum, and the defendant

prefers the *plaintiff's* home forum, there is little reason to defer to the plaintiff's preference."

*Ngonga v. Sessions*, 318 F. Supp. 3d 270, 275 (D.D.C. 2018) (emphasis in original).  That is the

case here, where both NID and the State Board are in the Eastern District.[4]  So the Court does not give NID's choice any deference.

The defendants' choice of forum "is not ordinarily entitled to deference" but is still "a consideration when deciding a § 1404(a) motion."  *Aishat v. U.S. Dep't of Homeland Sec.*, 288 F. Supp. 3d 261, 269 (D.D.C. 2018).  Here, the State Board's preferred forum is the Eastern District.  Mot. at 36–41.  So "[t]o the extent this factor carries any heft," it supports transfer. *Aishat*, 288 F. Supp. 3d at 269.

The third factor concerns where the claim arose.  "Transfer is favored when the material events that form the factual predicate of a plaintiff's claim did not occur in [its] chosen forum." *Id.* (cleaned up).  "Where claims arise from actions in several fora, this factor does not weigh in favor or against transfer."  *Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24, 32 (D.D.C. 2013) (cleaned up).  Here, the project exists in the Eastern District.  Compl. ¶ 14.  NID filed, withdrew, and resubmitted its application for a certification all in the Eastern District.  *Id.* ¶¶ 37, 39.  And the State Board issued the certification in the Eastern District.  *Id.* ¶ 53.

NID does not appear to dispute that this case mainly arose from the Eastern District; it instead points to the involvement of FERC, which also received NID's application and "will enforce the new terms of the certification as part of the new license" if the certification survives judicial scrutiny.  Opp'n at 6.  FERC's involvement, though, is almost exclusively forward-looking; this case may affect FERC's future obligations, but FERC's actions hardly "form[ed] the factual predicate of [NID's] claim[s]."  *Douglas*, 918 F. Supp. 2d at 32.  The claims here

---

[4]  The State Board asserts that NID is at home in the Eastern District, citing the NID's jurisdiction in Placer and Nevada Counties, and the location of its headquarters in Grass Valley, California.  Mot. at 38.  The State Board does not address this point in its opposition, so the Court accepts it as true.

pertain to the State Board's legal authority, as well as the legality of the many obligations within the certification.  Compl. at 23–40.  Even if looking ahead to the future effects of this case's outcome is appropriate on this factor, the State Board's regulations would play out in California—not here.  At best for NID this third factor is neutral, as related events occurred in both districts.  But the factual predicate for this dispute really occurred in the Eastern District.[5]

Next, the convenience of the parties also supports transfer.  Both parties reside in the Eastern District.  *See supra* at 5 & n.4.  Although Plaintiff's counsel practices in this district, *see* Compl. at 42, defense counsel is in California, *see* Mot. at 55.  Regardless, "the location of counsel carries little, if any, weight" under § 1404(a).  *State v. U.S. Army Corps of Engineers*, 304 F. Supp. 3d 56, 66 (D.D.C. 2018) (collecting cases).  Most importantly, there is no suggestion that transfer would materially inconvenience either party.

Similarly, the Court assumes that the parties are correct that the remaining two private factors—convenience of the witnesses and access to sources of proof—are largely neutral given the expected course of the case.  *See* Opp'n at 7; Defs.' Reply in Supp. of Mot. to Transfer ("Reply") at 9–10.  But if they swing in any direction, it is toward transfer.  *Cf. Bourdon v. United States Dep't of Homeland Sec.*, 235 F. Supp. 3d 298, 308 (D.D.C. 2017) ("If this case is eventually adjudicated solely based on an administrative record, that record presumably resides in the [Eastern District], where the adjudication of [NID's application] occurred, not in the District of Columbia.").

---

[5] NID's heavy reliance on *Exelon Generation Co., LLC v. Grumbles*, 380 F. Supp. 3d 1 (D.D.C. 2019), is misplaced.  *See* Opp'n at 4–5.  To be sure, that case involved a similar fact pattern and legal challenges.  But there Maryland authorities alleged that venue was improper under 28 U.S.C. § 1406(a) so that the case could have never been filed in this district.  *Exelon*, 918 F. Supp. 2d at 11–14.  They did not seek discretionary transfer under § 1404 as the State Board does here, and the court did not reach that question, which involves a different legal standard.  *Id.* at 9, n.2.

In sum, the private-interest factors slightly favor transfer.

**2.**

For public-interest factors, courts consider (1) the transferor and transferee courts' familiarity with the governing law, (2) the relative congestion of the two courts, and (3) "the local interest in deciding local controversies at home." *Montgomery*, 2020 WL 6939808, at *6. Overall these factors support transfer.

On the first factor, this case involves application of federal law, which this Court and the Eastern District are equally able to handle. *See Chauhan v. Napolitano*, 746 F. Supp. 2d 99, 105 (D.D.C. 2010). But NID also raises nine of its thirteen claims under California law. Compl. at 31–40. So this factor favors transfer, as the interests of justice are "best served by having a case decided by the federal court in the state whose laws govern the interests at stake." *Trout Unlimited*, 944 F. Supp. at 19.

Next, the Court considers the relative congestion of this district and the Eastern District. This factor weighs for transfer, given the pendency of a related case in the Ninth Circuit. The parties agree that as of a few months ago, this district had a weighted average caseload of 291 cases per judgeship and the Eastern District had 698. *See* Mot. at 40; Opp'n at 8. NID also cites a declaration filed by an attorney in a related case before this Court that adds statistics about the congestion in the Eastern District. *See* Resp. of Pl. Yuba Cnty. Water Agency to Mot. of Defs. Sobeck, Et Al. to Transfer Ex. 3, *Yuba Cnty Water Agency v. Sobeck, et al.*, No. 1:20-cv-03297-TNM, ECF No. 17-3. Of course, "the relative complexity of the two courts' dockets may not be reflected in [the] purely mathematical statistic" of the number of active cases. *W. Watersheds Project v. Jewell*, 69 F. Supp. 3d 41, 44 (D.D.C. 2014) (transferring case despite higher case load

in destination district).  Even so, the stark difference in caseloads between the districts would

typically militate against transfer.[6]

The Court is mindful, however, of the pending action in the Ninth Circuit reviewing

FERC's determination on the waiver question.  *See S. Yuba River Citizens League v. FERC*, No.

20-72452 (9th Cir. filed Aug. 17, 2020).  The parties acknowledge that a ruling here has no

practical effect unless the Ninth Circuit vacates FERC's order and directs it to issue a new

license to NID.  *See* Opp'n at 10; Reply at 12–13.  This fact lessens the urgency of any ruling in

this case.  More importantly, conserving the resources of the federal judiciary *as a whole*

marshals in favor of transferring these related claims to a district under the jurisdiction of the

Ninth Circuit.  Without transfer, the Ninth Circuit and D.C. Circuit could both independently

adjudicate the legality of the State Board's certification.  The Court seeks to avoid the judicial

inefficiencies resulting from multiple—and possibly inconsistent—rulings on this issue.  With

transfer, the Ninth Circuit could consolidate any appeals if they are ripe at the same time, or it

could at the very least issue controlling authority on the waiver question.  The existence of the

Ninth Circuit case thus tips this factor toward transfer.

Finally, "there is undoubtedly a local interest in deciding local controversies at home."

*Montgomery*, 2020 WL 6939808, at *8.  This factor weighs decisively in favor of transfer.  As

recounted above, *supra* at 5, here a local water authority in California sues a California state

board over state regulations imposed on a project in California.  *See supra* at 5.  To be sure, the

---

[6]  The parties disagree over what the relative caseloads would mean for the prospect of
expeditiously resolving this case.  *Compare* Opp'n at 10 *with* Reply at 12–13.  But in weighing
this "public-interest factor," the Court considers not merely any effects of transfer on this matter
but the administration of justice more generally.  *Cf. Stewart*, 487 U.S. at 30 (holding courts
must weigh the "public-interest factors of systemic integrity and fairness that, in addition to the
private concerns of the parties, come under the heading of 'the interest of justice'").

mere presence of the project in the Eastern District is not dispositive. *See Otay Mesa Prop. L.P. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 122, 126 (D.D.C. 2008) (declining to transfer case to California district where 4,000 acres of "critical habitat" resided because protection of endangered species was national concern).  But the project and the certification address water quality, resources, and infrastructure in specifically Placer and Nevada Counties, with the costs and benefits of California's regulations flowing to the local community. *See Trout Unlimited*, 944 F. Supp. at 19 (transferring case involving "water rights, environmental regulation, and local wildlife" because water project at issue was in transferee district and case "should be resolved in the forum where the people whose rights and interests are in fact most vitally affected by the suit" reside).  In short, the outcome matters far more to Californians than to Washingtonians.

*    *    *

Transfer is appropriate.  The parties are all in California, the administrative actions underlying the dispute occurred in California, the effects of a judicial determination will be felt in California, and this case relates to federal and state cases pending in California.

**IV.**

For all these reasons, the Court will exercise its discretion to transfer the case.  It is hereby

**ORDERED** that the Clerk of Court shall transfer this matter to the United States District Court for the Eastern District of California; and it is further

**ORDERED** that the Clerk of Court close this case.

**SO ORDERED.**

Dated:  April 29, 2021                                 _____
                                                        TREVOR N. McFADDEN, U.S.D.J.